## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| EDGAR RIVERA,<br>　　　　　Plaintiff<br><br>　　v.<br><br>BOARD OF EDUCATION FOR<br>TOWNSHIP HIGH SCHOOL<br>DISTRICT #214,<br>　　　　　Defendant | No. 23 CV 14977<br><br>Judge Jeremy C. Daniel |

### AMENDED MEMORANDUM OPINION AND ORDER

Plaintiff Edgar Rivera brings this lawsuit against the defendant, the Board of Education for Township High School District #214, alleging race and national origin discrimination under Title VII, 42 U.S.C. § 2000e *et seq*. ("Title VII") (Counts I and II), disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112 ("ADA") (Count IV), retaliation for reporting a disability under the ADA and retaliation for reporting harassment related to racial or national origin discrimination under Title VII (Count V), and discrimination by a state actor under color of law under 42 U.S.C. § 1983 (Count III). (R. 19 ("Second Amended Complaint or "SAC").)[1] The defendant moves to dismiss all counts, and to strike Rivera's request for punitive damages. (R. 21.) For the reasons that follow, the defendant's motion to dismiss is granted in part and denied in part.

---

[1] For ECF filings, the Court cites to the page number(s) set forth in the document's ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND

From July 2017 through June 30, 2022, Rivera was employed as a Division Head of Student Success, Safety, and Wellness at Elk Grove High School ("Elk Grove"). (SAC ¶ 10.) According to Rivera, throughout the entirety of his employment at Elk Grove, he received no complaints regarding his job performance. (*Id.* ¶ 17.) Rivera alleges a coworker, Justin Penio, made discriminatory remarks to Rivera based on Rivera's race and national origin. (*Id.* ¶ 20A.) According to the Second Amended Complaint, over the course of his time at Elk Grove, Rivera made his superiors aware, via a handful of in-person conversations, of Penio's conduct. (*See, e.g.*, *id.* ¶¶ 26, 32, 33–35, 38.) Also, during this time, Rivera began to suffer from anxiety and depression, which he alleges was linked to his work environment. (*Id.* ¶¶ 27–29.) Rivera alerted his supervisors to his mental health challenges; this was acknowledged via text message by the principal of Elk Grove, Paul Kelly. (*Id.* ¶¶ 29–31, 37–40.) Rivera contends his claims of harassment by Penio were never investigated and he received no assistance with his disability. (*Id.* ¶¶ 31, 35, 40.)

In October 2021, Penio left Elk Grove for a position at Buffalo Grove High School, a position Rivera regards as an unlisted promotion. (*Id.* ¶¶ 47–48.) On December 17, 2021, Rivera was told by Kelly and Interim Assistant Principal Steven Kolodziej that he "would not be back at Elk Grove the following year." (*Id.* ¶ 50.) No reasons for this decision were given. (*Id.* ¶ 51.) In the months leading up to his last day, June 30, 2022, Rivera attempted to secure other education related employment; according to the Second Amended Complaint, he applied for positions in school administration and teaching, both in and out of District 214. (*See generally, id.*, ¶¶

2

73A–H.) In some instances, Rivera was informed that Kelly had given the potential new employers negative reviews about Rivera's work. (*Id.* ¶¶ 73C, F.) Despite his efforts, Rivera was unable to secure education related employment. (*Id.* ¶ 75.)

On May 13, 2022, Rivera filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming race, national origin, and disability discrimination. (*Id.* ¶ 6; *see also* R. 19-1.) The defendant filed a written response to the charge in May 2023, (SAC ¶ 6; *see also* R. 19-8), to which Rivera replied on June 6, 2023 (SAC ¶ 7; *see also* R. 19-9.) The EEOC issued a Right to Sue notice on July 18, 2023. (SAC ¶ 7; *see also* R. 19-2.) Rivera's Second Amended Complaint was filed on June 28, 2024. (SAC.) The defendant now moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). (R. 21.)

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Calderon-Ramirez v. McCarment*, 877 F.3d 272, 275 (7th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). The Court "draw[s] all reasonable inferences in [Rivera's] favor." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (internal citations omitted). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Triad Assocs. Inc. v. Chi. Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). Any ambiguities in the complaint are construed in Rivera's favor. *Kelley v. Crossfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998).

## ANALYSIS

### I. FAILURE TO EXHAUST – COUNTS I, II, IV AND V

First, the defendant moves to dismiss Counts I, II, IV and V for failure to exhaust administrative remedies. (R. 21 at 3.) "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in h[is] EEOC charge." *Cheek v. W. and S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974)). This rule serves two purposes: "[i]t affords the employer some notice of the conduct underlying the employee's allegation," *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019), and it "also 'affords the agency and the employer an opportunity to attempt conciliation without resort to the courts,'" *id.* (quoting *Rush v. McDonalds Corp.*, 966 F.3d 1104, 1110 (7th Cir. 1992)). That said, courts recognize that "most EEOC charges are completed by laypersons, rather than by lawyers." *Cheek*, 31 F.3d at 500. Therefore, "a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in h[is] complaint." *Id.* (citing *Taylor v. W. & S. Life Ins. Co.*, 966 F.2d 1188, 1195 (7th Cir. 1992)). Claims that are "like or reasonably related to the EEOC charge, and can be reasonably expected to grow out of an EEOC investigation of the charges" may be brought. *Sitar v. Ind. Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003) (citing *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). For a claim to be "like or reasonably related to" the allegations in an EEOC charge, there must be a factual relationship between the charge and the claim, *Cheek*, 31 F.3d at 501, meaning that at minimum, they "describe the same circumstances and participants." *Cervantes*, 914 F.3d at 565

4

(quoting *Connor v. Ill. Dept. of Nat. Res.*, 433 F.3d 675, 680 (7th Cir. 2005) (internal quotations omitted)).

The Court considers Count I, II, IV, and V in turn.

### A.     Count I

As to Count I, the defendant argues that it should be dismissed because Rivera's EEOC charge is void of details describing how he was "subjected to racial harassment or discrimination." (R. 21 at 4.) Though Rivera did not "check the box" for racial discrimination, he wrote that he believed he was being discriminated against because of his "national origin, Hispanic[.]" (R. 19-1.) There is "uncertainty about what constitutes race versus national origin discrimination under Title VII." *Salas v. Wis. Dept. of Corrs.*, 493 F.3d 913, 923 (7th Cir. 2007) (citing *Torres v. City of Chi.*, No 99 C 6622, 2000 WL 549588, at *2 (N.D. Ill. May 1, 2000)). However, courts in this district have found that alleging discrimination based on being "Hispanic" would reasonably cause the EEOC to investigate race and national origin discrimination. *See, e.g., Torres*, 2000 WL 549588, at *2; *see also Gaytan v. City of Chi.*, No. 11 C 8624, 2012 WL 2597932, at * 5–6 (N.D. Ill. July 5, 2012).

In *Torres*, the plaintiff did not "check the race discrimination box on [his] EEOC charges" when alleging he was discriminated because of his "national origin, Hispanic," but brought discrimination claims based on both national origin and race. *Torres*, 2000 WL 549588, at *1–2. The court explained that "the term 'Hispanic' is unique, encompassing the concepts of race and national origin[.]" *Id.* at *2. As a result, the "dual understanding of the term Hispanic would reasonably cause the EEOC to investigate discrimination based both on national origin and race[.]" *Id.*

5

(internal citations omitted). Similarly, in *Gaytan*, the district court determined that the plaintiff's use of the term "Hispanic," when not connected to a specific country of origin, "would reasonably have alerted the EEOC to his race discrimination claim." 2012 WL 2597932, at *6. In addition, several courts in this district have cited to *Torres's* reasoning to highlight the uniqueness of the term "Hispanic" in this context. *See, e.g., Goodlet v. City of Chi.*, No. 22 C 570, 2024 WL 3105883, at *4 (N.D. Ill. June 24, 2024) (considering *Torres*); *Segura v. TLC Learning Ctr.*, No. 12 C 7020, 2013 WL 1283827, at *5 (N.D. Ill. Mar. 26, 2014) (same); *Gaytan*, 2012 WL 2597932, at *5–6 (N.D. Ill. July 5, 2012) (same); *Oranika v. City of Chi.*, No. 04 C 8113, 2005 WL 2663562, at *3 (N.D. Ill. Oct. 17, 2005) (same).

Here, the Court is persuaded by the reasoning in *Torres*. And because "charges are to be construed with the 'utmost liberality,'" *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 866 (7th Cir. 1985) (quoting *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981)), the Court finds that Rivera's reference to "Hispanic" in the EEOC charge provided notice to the defendant of Rivera's race discrimination claim. Administrative exhaustion is met for Count I.

### B.    Count II

Administrative exhaustion was similarly met for Count II. The defendant focuses on the four corners of the charge to argue that "[n]othing in [Rivera's] charging document refers to any specific conduct that could reasonably be related to a hostile work environment claim." (R. 21 at 6.) But that ignores both the defendant's and Rivera's "position papers." (R. 19-8, 19-9); *see Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("When ruling on a motion to dismiss, the court may consider

documents . . . attached to the complaint . . .”). According to Rivera, the defendant filed a written response to the EEOC charge in May 2023, to which Rivera responded on June 6, 2023. (*See* SAC ¶¶ 6–7; *see generally*, R. 19-8, 19-9.) Both documents were submitted prior to the EEOC issuing Rivera's Notice of a Right to Sue. (*See* SAC ¶ 7; R. 19-2.) The defendant's position paper describes in significant detail its view of the alleged harassment Rivera suffered. (*See* R. 19-8 at 8–10.) Rivera's response goes into greater detail about the alleged harassment and how it contributed to a hostile work environment. (*See, e.g.*, R. 19-9 at 7, 14–16.) “[I]ssues implied by a charge and communicated to the employer in the course of investigation can enlarge the set of claims open to the investigation[.]” *O'Rourke v. Continental Cas. Co.*, 983 F.2d 94, 97 (7th Cir. 1993). And “[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations.” *Cheek*, 31 F.3d at 502. Drawing all reasonable inferences in Rivera's favor, the parties' act of addressing the hostile work environment claims in their respective position papers, seemingly filed as part of the EEOC case, suggests that the defendant was on notice of the hostile work environment claims. *Cf. Cervantes*, 914 F.3d at 566 (“[W]e must remember that [plaintiff's] counsel submitted the letter . . . ex parte; it therefore did not provide [the defendant] with any notice of [the plaintiff's] potential discrimination claims.”). Thus, Count II was administratively exhausted.

### C.    Count IV

Count IV alleges disability discrimination under the ADA. (SAC ¶¶ 97–106.) As with Title VII, a plaintiff bringing a claim under the ADA must first file a charge

with the EEOC before filing a lawsuit against an employer. *Whitaker v. Milwaukee Cnty, Wis.*, 772 F.3d 802, 812 (7th Cir. 2014). Rivera's complaint appears to raise two causes of action under the ADA; disparate treatment—that he was fired because of his disability, and failure to accommodate. (*See* SAC ¶ 101 ("The Board failed . . . to engage with Rivera in the interactive process to understand his disabilities and offer him a reasonable accommodation . . ."), ¶ 102 (". . . the Board eventually terminated Rivera's employment because of his disabilities.").) "A claim for failure to accommodate is separate and distinct under the ADA from one of disparate treatment because of a disability." *Green v. Nat. Steel Corp., Midwest Div.*, 197 F.3d 894, 897 (7th Cir. 1999). As such, the Court considers each theory in turn.[2]

### 1. Disparate Treatment

With respect to disparate treatment, the ADA forbids discrimination based on disability "in regard to . . . discharge of employees . . ." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019) (quoting 42 U.S.C. § 12112 (a)). Rivera's EEOC charge reads that "[a]fter informing [the defendant] of [his] disability, on or about December 17, 2021, [he] was notified [he] will be discharged on June 30, 2022 . . . [He] also believe[s] that [he] ha[s] been discriminated against because of [his] disability . . ." (R. 19-1.) The charge names Township High School District 214 as the participants in the alleged discrimination. (*Id.*) In its position paper, the defendant states that there is

---

[2] The parties' briefing with respect to Count IV does not address the allegation that Rivera was subjected to disparate treatment because of his disability; instead, it focuses solely on the allegation that Rivera's disability was not accommodated. However, because the EEOC charge alleges discrimination based on disability (*see* R. 19-1), the Second Amended Complaint also includes that allegation (*see* SAC ¶ 102), and Rivera is the nonmovant, the Court considers the allegation of disparate treatment.

no "evidence that the District's decision not to offer [Rivera] a new contract at the end of his employment contract was based on his alleged disability." (R. 19-8 at 7.) This supports an inference that the defendant was on notice that Rivera believed he was fired from his job because of his disability. Therefore, to the extent Count IV alleges disparate treatment based on disability, it has been administratively exhausted.

### 2. Failure to Accommodate

As for the failure to accommodate theory, under the ADA, it is unlawful to "fail to make reasonable accommodations to the known physical or mental disabilities of an otherwise qualified individual with a disability." *Green*, 197 F.3d at 897 (citing 42 U.S.C. § 12112(b)(5)(A)). The Seventh Circuit has said that because failure to accommodate claims are "separate and distinct" from disparate treatment claims, "one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (quoting *Green*, 197 F.3d at 897).

However, courts in this district do not necessarily read *Green* to mean that a "discrimination claim is *per se* incapable of supporting an accommodation claim—no matter the facts." *See e.g., Morales v. Goodwill Indus. Of Se. Wis., Inc.*, 14 C 2370, 2014 WL 4914255, at *4 (N.D. Ill. Sep. 30, 2014) (Shah, J.) (collecting cases); *see also Whitaker*, 772 F.3d at 812 (acknowledging EEOC's position that "there can be cases where a discriminatory termination claim can be so closely related to a reasonable accommodation claim that it would be appropriate to consider an unstated reasonable accommodation claim along with a stated discriminatory discharge claim."). The distinction drawn is whether the conduct underlying the discrimination charge had

9

something to do with the underlying accommodation claim. *Compare Green*, 197 F.3d at 898 ("[W]e fail to understand how [the plaintiff] could expect her claim that she suffered inadequate working conditions would develop from the investigation of reasons for her discharge.") *with Morales*, 2014 WL 4914255, at *4 (finding that it would "not be unreasonable to think an investigation into the plaintiff's termination would grow into an investigation into defendant's failure to accommodate" when the defendant refused plaintiff's accommodation request and fired her when she would not work in an unaccommodated space) *and King v. HEI/Hotel Chi. Downtown Autograph Collection*, No. 20 C 1283, 2020 WL 7771139, at *1, 3 (N.D. Ill. Dec. 29, 2020) (determining that the "circumstances involving the employer's failure to accommodate were intertwined with the circumstances involving the claimed discriminatory" treatment when the plaintiff was refused an accommodation of modified schedules and subsequently disciplined for absenteeism and tardiness). In other words, the failure to accommodate was directly related to the alleged discriminatory act, such that they were "like or reasonably related to the allegations in the EEOC charge." *Cheek*, 31 F.3d at 501 (internal quotations omitted).

Rivera acknowledges he did not specifically refer to the defendant's alleged failure to accommodate in his EEOC charge. (R. 24 at 9.) So, as it did with Count II, the Court considers the parties' position papers. (R. 19-8, 19-9.) The defendant's position paper states that Rivera did not "make any comment which suggested he needed any accommodations to assist him in performing his job," nor specifically "request any accommodation." (R. 19-8 at 7–8.) Rivera's only specific reference to an

accommodation is that from the point he alleges he notified his superiors of his disability, "no accommodation or support [was] put in place to help [him]." (R. 19-9 at 19–20.) These statements do not suggest that the "circumstances involving the employer's failure to accommodate intertwined with the circumstances involving the claimed discriminatory termination." *King*, 2020 WL 7771139, at *3. "Even assuming that [the defendant] did fail to accommodate [Rivera's] alleged disability, that has nothing to do with [his] complaint that [he] was wrongfully terminated." *Green*, 197 F.3d at 898. Accordingly, to the extent Rivera alleges a claim for failure to accommodate, that has not been exhausted in front of the EEOC.

### D. Count V

Count V alleges retaliation for reporting a disability and for reporting harassment related to racial or national origin discrimination. (SAC ¶¶ 108–09.) The defendant raises no arguments regarding retaliation based on *disability* discrimination. (*See* R. 21 at 7–8 (arguing that the plaintiff did not identify protected activity engaged in related to race or national origin); R. 25 at 5–6 ("Plaintiff's EEOC Charge failed to give notice of a possible claim for retaliation for national origin or race discrimination . . . nowhere does it indicate any adverse action or protected activity connected with Plaintiff's claim of national origin (or lack of claim for race discrimination).").) The Court interprets this to mean that the parties do not dispute that retaliation as to Rivera's disability was exhausted. *See Stransky v. Cummins Engine Co.*, Inc., 51 F.3d 1329, 1335 (7th Cir. 1995) ("The federal courts will not invent legal arguments for litigants.").

11

As to Rivera's claim for retaliation based on race and national origin, typically "discrimination and retaliation claims are not considered to be 'like or reasonably related to one another.'" *Swearnigen-El v. Cook Cnty. Sheriff's Dept.*, 602 F.3d 852, 864–65 (7th Cir. 2010) (quoting *Sitar*, 344 F.3d at 726). And to allege retaliation in an EEOC charge, the exercise of a protected right or some adverse consequence must be identified. *O'Rourke*, 983 F.2d at 97. Here, Rivera argues that his EEOC charge ties his termination from the district to his reporting of his Title VII and ADA claims. (R. 24 at 9.) The defendant counters that the charge does not identify any complaints or protected activity related to race or national origin. (R. 21 at 7–8, R. 25 at 5–6.)

Looking at the EEOC charge, Rivera did not "check the box" for retaliation (R. 19-1); *see also Swearnigen-El*, 602 F.3d at 864 (noting that the plaintiff did not check the box for retaliation "or otherwise indicate that action had been taken against him for reasons other than his race and gender."). The explanation in the charge also states that "[a]fter informing [the defendant] of [his] *disability*, on or about December 17, 2021, [he] was notified [he] will be discharged . . ." (R. 19-1 (emphasis added).) Rivera's charge does not say that he was fired because of allegations of race or national origin discrimination. The same is true in Rivera's position paper, which was written by an attorney. *See O'Rourke*, 983 F.2d at 97 (acknowledging that while laypersons "cannot be expected to know the legal buzzwords," the same standard is not applied to those who have an attorney). Rivera's paper starts by saying that he was retaliated against for disclosing a hostile work environment, and for raising his claim of disability. (R. 19-9 at 1.) Then, he argues that he "not only faced

12

discrimination, but also retaliation for raising a disability based upon anxiety and depression." (*Id.* at 2.) And that while "the Principal thanked [ ] Rivera for alerting Elk Grove to the existence of this disability[, t]he retaliatory response was to terminate [ ] Rivera's employment." (*Id.* at 2–3.) There is no reference to retaliation against Rivera *on the basis of* his race or national origin. Absent any reference to complaints or protected activity related to race or national origin, race or national origin retaliation would not reasonably be expected to grow out of the EEOC's investigation into disability retaliation. Accordingly, to the extent Count V alleges retaliation based on race or national origin, that claim has not been administratively exhausted.

In sum, the Court finds that Counts I and II have been administratively exhausted, as well as Count IV to the extent it alleges discrimination based on disparate treatment and Count V to the extent it alleges retaliation based on disability. The claim of failure to accommodate in Count IV has not been administratively exhausted, nor has the claim of retaliation based on race and national origin in Count V.

## II.   FAILURE TO STATE A CLAIM – ALL COUNTS

The defendant also argues that all five counts in Rivera's Second Amended Complaint fail to state a claim. The Court considers each count in turn.[3]

---

[3] Because the Court has already determined that Count IV, to the extent it alleges disability discrimination based on failure to accommodate, and Count V, to the extent it alleges retaliation on the basis of race and national origin, were not administratively exhausted, the Court will not consider the defendant's arguments as to whether a claim was stated for these counts. (*See* R. 21 at 11–12 (arguing claims not stated for failure to accommodate and retaliation based on race and national origin).) For the reasons already

### A.     Counts I and II

As to Counts I and II, the defendant argues that Rivera failed to state a claim under Title VII for race or national origin discrimination. (R. 21 at 9–11.) To state such a claim, Rivera must allege that he is a member of a protected class, that he was meeting his employer's expectations, that he suffered an adverse employment action, and that similarly situated employees outside of his protected class were treated more favorably. *Lauderale v. Ill. Dept. of Human Servs.*, 876 F.3d 904, 910 (7th Cir. 2017). The defendant concedes that Rivera is a member of a protected class. (R. 21 at 10.) Rivera alleges that he was meeting his employer's expectations; the Second Amended Complaint describes how Rivera received an evaluation of "excellent" for four consecutive years and an evaluation of "proficient" in his last year. (SAC ¶ 15.) Rivera suffered an adverse employment action: he was let go from his position. (*Id.* ¶¶ 50, 81.) Finally, Rivera alleges that Penio, a similarly situated employee who is not a member of Rivera's protected class, was treated more favorably; the Second Amended Complaint details how Penio moved to an "unlisted" position where he would serve as the "sole" Division Head of Student Success, Safety, and Wellness. (*Id.* ¶ 48.) According to Rivera, that was a promotion. (*Id.* ¶ 47.) "A complaint that identified the type of discrimination that plaintiff thought occurred, by whom, and when, was all the plaintiff needed to put in [his] complaint." *Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 833 (7th Cir. 2015) (internal quotations and

---

provided, Counts IV and V, based on those theories, cannot be considered by the Court. Likewise, the defendant did not move to dismiss Count IV's disparate treatment claim nor Count V's disability-based retaliation claim under Rule 12(b)(6). Therefore, those claims survive.

citations omitted) (cleaned up). Rivera has done that here. (*See, e.g.*, SAC ¶¶ 81, 89 (identifying the type of discrimination, when it occurred, and by whom).) The defendant's motion as to Counts I and II is denied.

### B. Count III

The defendant moves to dismiss Count III, arguing that Rivera failed to allege a viable theory under *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978). *Monell* applies here because the school board is a municipal defendant. However, "there can be no *Monell* liability where there is no underlying constitutional violation." *LaChance v. Cmty. Consolidated School Dist. 93*, No. 22 C 01266, 2024 WL 1254182, at *6 (N.D. Ill. Mar. 25, 2024) (citing *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010)).

Here, Rivera alleges that he had a "liberty interest in continuing his employment with the Board." (SAC ¶ 96; *see also* R. 24 at 10.) But only "the individual's liberty to pursue a particular occupation . . . not the individual's right to any one job," is protected. *Bryant v. Gardner*, 545 F. Supp. 2d 791, 798 (N.D. Ill. 2008) (citing *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001)). In other words, Rivera does not have a liberty interest in continuing his specific employment with the Board, but rather has a liberty interest in his ability to pursue his chosen occupation.

The Second Amended Complaint includes an allegation that the defendant's "intentional and malicious conduct in defaming [ ] Rivera's reputation . . . made it virtually impossible for Rivera to find new employment in his chosen field." (SAC ¶ 98.) Because the Court must construe all ambiguities in the plaintiff's favor, the Court

15

reads this as an allegation that the defendant prevented Rivera from pursuing his chosen occupation. "The government violates an employee's occupational liberty interest when, in the course of a discharge, failure to rehire, or other adverse employment action, the employer stigmatizes the employee by making public comments that impugn 'the individual's good name, reputation, honor, or integrity' or impose a 'stigma or other disability on the individual which forecloses other opportunities.'" *Bryant*, 545 F. Supp. 2d at 798 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). Simply put, "[t]o sufficiently plead the deprivation of an occupational liberty interest, the plaintiff must allege: (1) the employer made stigmatizing comments; (2) the comments were publicly disclosed; and (3) the plaintiff suffered a tangible loss of other employment opportunities as a result." *Id.* (citing *Townsend*, 256 F.3d at 670). Because "any time an employee is involuntarily terminated, some stigma attaches which affects future employment opportunities . . . [t]he circumstances of the termination "must make it virtually impossible for the employee to find new employment in that field." *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1348–49 (7th Cir. 1995) (citing *Ratliff v. City of Milwaukee*, 795 F.2d 612, 625 (7th Cir. 1986)). "The public-disclosure element requires the defendant actually disseminate the stigmatizing comments in a way that would reach potential future employers or the community at large." *Palka v. Shelton*, 623 F.3d 447, 454 (7th Cir. 2010) (citing *Ratliff*, 795 at 627)). And the government "must have actually participated in disseminating the information to the public." *Lashbrook*, 65 F.3d at 1349.

Rivera alleges that the defendant "discriminated against Rivera when it made defamatory, pejorative, and stigmatizing comments to various third parties about [ ] Rivera during and after they terminated his employment." (SAC ¶ 97.) According to Rivera, the comments were made to "administrators and other decision-makers" who reached out to Board employees for information about Rivera. (*Id.*) Specifically, Rivera alleges that he learned from one interviewer that Kelly gave Rivera a negative reference: that "Rivera had difficulty dealing with peer colleague conflict[.]" (*Id.* ¶ 73C.) In another instance, Rivera was told by District 214 human resources that his "narrative" email bothered some of the district's principals. (*Id.* ¶ 74D.) Rivera was also told that he was "being 'sandbagged' by District 214 and the Board." (*Id.* ¶ 74F.) These comments that Rivera identifies in his Second Amended Complaint are the type of statements one might make when asked for an employee recommendation. "[S]imply labeling an employee as being incompetent or otherwise unable to meet an employer's expectations does not infringe the employee's liberty." *Head v. Chi. School Reform Bd. of Trustees*, 225 F.3d 794, 801 (7th Cir. 2000) (citing *Lashbrook*, 65 F.3d at 1348–49). Rivera's allegations are not "sufficiently stigmatizing" to show that there was an infringed liberty interest, *Bryant* 545 F. Supp. 2d at 800; "a termination is only stigmatizing if it is accompanied by a publicly announced reason that impugns [the employee's] moral character or implies dishonesty or other job-related moral turpitude." *LaChance*, 2024 WL 1254182, at *6. Because the Second Amended Complaint does not plausibly allege a constitutional violation, there can be no *Monell*

liability. As a result, the Court need not reach whether the plaintiff pled necessary facts to meet the *Monell* standard. Count III is dismissed.

### III.  PUNITIVE DAMAGES

Finally, the defendant moves to dismiss Rivera's request for punitive damages. (R. 21 at 12–13.) Municipalities are immune from punitive damages. *First Midwest Bank Guardian of Estate of LaPorta v. City of Chi.*, 988 F.3d 978, 985 n.3 (7th Cir. 2021) (citing *City of Newport v. Fact Concerts, Inc.*, 435 U.S. 247, 271 (1981)) ( § 1983); *Passanti v. Cook Cnty.*, 689 F.3d 655, 677 (7th Cir. 2012) (Title VII). Therefore, Rivera's request for punitive damages is stricken.

## CONCLUSION

The defendant's motion to dismiss (R. 20) is granted as to Count III, IV based on failure to accommodate, and V related to race-based retaliation. The plaintiff's request for punitive damages is stricken. The motion is denied in all other respects. The defendant shall respond to the plaintiff's remaining claims (Counts I, II, IV—disparate impact, and V—disability related retaliation) on or before November 11, 2024. The October 22, 2024, status hearing is stricken.

Date: October 21, 2024

_____
JEREMY C. DANIEL
United States District Judge

18